Filed 12/14/23  P. v. Guzman CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SAMUEL SAMSON GUZMAN,<br><br>    Defendant and Appellant. | D080717<br><br><br><br>(Super. Ct. No. RIF110891) |

APPEAL from an order of the Superior Court of Riverside County, Samuel Diaz, Jr., Judge.  Affirmed.

Mazur & Mazur and Janice R. Mazur for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, A. Natasha Cortina, Lynne G. McGinnis and Christine Levingston Bergman, Deputy Attorneys General for Plaintiff and Respondent.

Samuel Samson Guzman appeals an order denying his petition for resentencing under former Penal Code section 1170.95 (now section 1172.6)[1] based on changes to the felony murder rule and the natural and probable consequences doctrine (Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019)). He contends the superior court erred by denying his petition at the prima facie stage "because the prosecution failed to submit any briefing or anything from the record of conviction refuting [his] allegations, and the court failed to otherwise explain its reasoning." (Capitalization and emphasis omitted.) He also contends the court did not independently review the record of conviction.

The People concede error, but claim any error was harmless because Guzman "is ineligible for relief as a matter of law. [His] jury was not instructed on the natural and probable consequences doctrine, felony-murder, or any other theory of imputed malice; rather, the record of conviction shows [he] was convicted of second degree murder as the direct perpetrator acting with the specific intent to kill. Accordingly, remand for further proceedings is unwarranted."[2] We agree with the People's concession and affirm.

FACTUAL AND PROCEDURAL SUMMARY

A. *Facts*

The statement of facts is taken from this court's nonpublished opinion in *People v. Guzman* (Apr. 9, 2008, D050461).

---

[1]    Undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We refer to the statute throughout as section 1172.6.

[2]    We granted the People's motion to take judicial notice of the record in the prior appeal.

On June 24, 2003, Guzman's father, Samuel Guzman, Sr. (Sammy), visited his brother-in-law's house in Moreno Valley. After everyone had been drinking alcohol, Sergio Rico and Sammy began arguing because Rico wanted to leave but Sammy's parked car was blocking his truck's path. Rico grabbed Sammy, punched him in the face, knocked him down to the ground, straddled him, and held him down. Guzman's brother-in law broke up the fight and told everyone to go home. Before leaving, Sammy said, "This ain't over yet."

Sammy drove to his home in Perris, which is about 10 miles away. Sammy told his son, Guzman, about his fight with Rico. Guzman and Sammy drove to Moreno Valley, first to the brother-in-law's house, and then to Rico's house, where Rico and others were outside drinking alcohol and smoking marijuana. Guzman began walking up the driveway toward Rico, and from six feet away pulled out a revolver from his front pocket and fired six shots at Rico, who fell to the ground. As Guzman was driving away, he slowed down, looked back, laughed, and then sped up.

An autopsy showed Rico had sustained six gunshot wounds. Three shots entered his abdomen, one shot entered the left side of his chest, and two shots entered his left upper back. Only the two shots entering Rico's back showed stippling, evidence the gun was within eighteen to twenty-four inches of his body when fired. One of those two shots lodged in Rico's spinal canal, which would have caused instant paralysis from his waist down. As a result of that shot, Rico would have fallen and been unable to move. The evidence regarding the latter two shots was consistent with Rico lying on the ground while the shooter fired bullets into Rico's back at close range.

Guzman testified that he took his loaded revolver to Moreno Valley. He knew Rico's reputation for carrying weapons and committing violent acts. During the altercation, Guzman approached Rico and asked, "What is up

3

with my dad?" Rico walked quickly toward Guzman and replied, "F[ ] you." Rico then pulled out a knife he had hidden on his person and swung it at Guzman's head. Rico missed and began to raise the knife to swing it again. Afraid of being stabbed, Guzman pulled his gun from his pocket and began shooting at Rico during Rico's second swing. Rico stumbled forward, bent forward at the waist, and then stumbled backward four steps and fell to the ground. Guzman drove away because he was afraid of what Rico's family might do to him. After dropping off his father at home, Guzman drove to a restaurant, put his gun in a rag, and threw it in a dumpster.

In rebuttal, the forensic pathologist testified that Guzman's testimony regarding the relative positions of Guzman and Rico during the shooting was not consistent with Rico's wounds.

B. *Charges and Convictions*

The People charged Guzman with murder of Rico (§ 187, subd. (a)), and alleged that in the commission of the offense, Guzman personally and intentionally discharged a firearm and proximately caused great bodily injury or death within the meaning of section 12022.53, subdivision (d) and 1192.7, subdivision (c)(8).

A jury convicted Guzman of second degree murder and found true the allegations that he personally and intentionally discharged a firearm causing great bodily injury or death.

The court sentenced Guzman to a total indeterminate term of 40 years to life as follows: 15 years to life for murder, and 25 years to life for the enhancements.

*Resentencing Petition*

In February 2022, Guzman petitioned for resentencing under former section 1170.95, alleging that he had been convicted of murder under the

4

natural and probable consequences doctrine and could not currently be convicted of murder because of changes to the murder statutes enacted by Senate Bill No. 1437.

The prosecutor did not file a response to the petition. Instead, during a hearing on the matter, this exchange occurred:

"[Prosecutor]: . . . [T]he jury instructions are online. They're available for view. Neither the natural and probable consequences or felony murder instructions were given, so the defendant is ineligible [for resentencing].

"[Defense Counsel]: Your Honor, I did review the jury instructions. I'm in agreement there were no natural and probable consequences or felony murder instructions given.

"The court: So at this time the defendant is not entitled or eligible for relief?

"[Prosecutor]: That's our understanding and motion.

"The court: Do I vacate—

"[Prosecutor]: Just deny the petition at this point.

"The court: At this time the court is going to deny the petition based upon both counsel[s'] representations."

The court denied Guzman's petition without issuing an order to show cause.

## DISCUSSION

A. *Legal Principles*

Senate Bill No. 1437, effective January 1, 2019, "amend[ed] the felony[-] murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless

5

indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708.) With a narrow exception for peace officer victims (§ 189, subd. (f)), the Legislature effectively eliminated murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life. (§§ 188, subd. (a)(3), 189, subd. (e); see *Strong*, at pp. 707-708.) Specifically, the Legislature amended section 188 to require that, except in cases of first degree felony murder, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); *People v. Brown* (2023) 14 Cal.5th 453, 468, fn. 7; *People v. Guiffreda* (2023) 87 Cal.App.5th 112, 122.)

The Legislature later amended section 1172.6 to expand its coverage to individuals convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a); *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

The Legislature created a procedural mechanism for those convicted under the former law to seek retroactive relief under the amended law. (§ 1172.6, subd. (a); *People v. Strong, supra*, 13 Cal.5th at p. 708.) "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of

changes to . . . [s]ection 188 or 189 . . . .' " (*Ibid.*, fn. omitted.) Within 60 days after service of the petition, the prosecutor shall file and serve a response. (§ 1172.6, subd. (c).) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Ibid.*)

The trial court in conducting the prima facie inquiry may properly examine the record of conviction "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) But its inquiry is limited: " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*Lewis,* at p. 971; *People v. Harden* (2022) 81 Cal.App.5th 45, 51.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972; *Harden,* at p. 51 [" '[T]he trial court should not decide unresolved factual issues[ ] that involve credibility determinations or weighing of evidence' "].) "Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*." (*Harden,* at p. 52.) " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified

7

in making a credibility determination adverse to the petitioner." ' " (*Lewis,* at p. 971; *Harden*, at p. 52.) "For example, if the record shows that the jury was not instructed on either the natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law." (*Harden*, at p. 52.)

We analyze a lower court's failure to follow section 1172.6's procedures for prejudice under the state law standard of *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Lewis, supra*, 11 Cal.App.5th at pp. 973-974; accord, *People v. Myles* (2021) 69 Cal.App.5th 688, 706 [applying standard to admission of evidence at section 1172.6 evidentiary hearing].) Under this standard, we ask whether " 'there is a reasonable probability that in the absence of the error [Guzman] would have obtained a more favorable result.' " (*Lewis*, at p. 974.) More specifically, when the court errs by denying a section 1172.6 petition before issuance of an order to show cause, the petitioner seeking to demonstrate prejudice must show it is reasonably probable that, absent that error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis,* at pp. 972-974; *Watson*, at p. 836.)

It is Guzman's burden as the appellant to show prejudice. Despite having the benefit of *People v. Lewis*, *supra*, 11 Cal.5th 952, he did not attempt to do so in his opening appellate brief. To establish prejudice from error, it was incumbent on him to present us with any portions of the record of conviction establishing the jury could have convicted him of a now-invalid theory of murder.

Under the plain language of section 1172.6, a person convicted of murder is eligible for relief only if that conviction was based on the felony murder or the natural and probable consequences doctrine or other theory of imputed malice based solely on that person's participation in a crime.

8

(§ 1172.6, subd. (a) ["[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or any other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts"].)  For harmless error purposes, the question is whether the record of conviction contains facts refuting a petitioner's allegations that he was convicted under any applicable theory. (See *People v. Lewis, supra*, 11 Cal.5th at p. 971; *People v. Mejorado* (2022) 73 Cal.App.5th 562, 572 [error in failing to appoint counsel is harmless "if we can determine that the record of conviction ' " 'contain[s] facts refuting the allegations made in the petition' " ' "]; cf. *People v. Harden, supra*, 81 Cal.App.5th at pp. 47-48 [defendant ineligible as a matter of law where record "*conclusively* establish[ed]—with no factfinding, weighing of evidence, or credibility determinations" the jury convicted him on a still-valid theory of murder]; accord, *People v. Garcia* (2022) 82 Cal.App.5th 956, 969-971 [affirming denial of resentencing because record of conviction "unequivocally establishe[d]" defendant was the sole perpetrator and actual killer].)  Such can be shown when the jury instructions and verdicts refute any possibility that Guzman's jury convicted him of murder under a natural and probable consequences theory.  (Accord, *Harden,* at pp. 47-48; *People v. Daniel* (2020) 57 Cal.App.5th 666, 676 [" '[J]ury instructions given at a petitioner's trial may provide "readily ascertainable facts from the record" that refute [a petitioner's prima facie showing]' permitting a trial court to determine that a petitioner is not entitled to relief"].)

9

B. *Analysis*

Here, the only theory on which Guzman's jury was instructed was murder as a direct perpetrator, which does not qualify for section 1172.6 relief. (See *People v. Cortes* (2022) 75 Cal.App.5th 198, 205-206.) Specifically, the trial court instructed the jury with CALJIC No. 8.10 regarding murder and CALJIC No. 8.11 regarding malice aforethought.

As the jury instructions given did not permit the jury to convict Guzman of murder "under the natural and probable consequences doctrine" or other theory under which malice is imputed to a person based solely on that person's participation in a crime (§ 1172.6, subd. (a)), he is ineligible for relief under section 1172.6 as a matter of law. (*People v. Cortes, supra,* 75 Cal.App.5th at p. 206 [defendant convicted of murder not entitled to section 1172.6 relief because the jury was not instructed on the natural and probable consequences doctrine]; see *People v. Delgadillo* (2022) 14 Cal.5th 216, 233 [recognizing the defendant was "not entitled to any relief under section 1172.6" because he "was the actual killer and the only participant in the killing"]; see also *People v. Garcia, supra,* 82 Cal.App.5th at p. 969.)

Guzman argues: "There is no indication the court independently considered any other documents from the record of conviction in denying the petition. . . . This means the court considered only [his] facially valid declarations supporting his eligibility for relief . . . and the attorneys' oral representations as to limited parts of the purported record of conviction. Those representations did not conclusively demonstrate [he] was ineligible for relief as a matter of law. Accordingly, the superior court was required to issue an order to show cause." But Guzman does not point to any other documents in the record of conviction showing he was eligible for resentencing, nor has our review disclosed any.

10

Guzman relatedly argues: "[T]he superior court violated section 1172.6 and [his] federal and state due process rights by failing to provide a substantive statement of reasons for denying his petition. . . . Here, the court stated only that is was [*sic*] denying the petition based upon both counsels' representations. . . . The court did not explain why it found [him] statutorily ineligible, or on what, if any, documents it relied in making that finding." Under section 1172.6, subdivision (c), the court denying the resentencing petition at the prima facie stage was required to "provide a statement fully setting forth its reasons for doing so." The court did not comply with that provision; instead, it stated at the motion hearing it relied on counsels' representations that, based on the jury instructions given, Guzman was ineligible for relief under the resentencing statute. Under the applicable harmless error prejudice standard set forth above (*People v. Lewis, supra*, 11 Cal.5th at p. 973), Gonzalez has not shown a reasonable probability of a more favorable result if the court had provided a statement further elaborating on its reasoning.

DISPOSITION

The order denying Guzman's section 1172.6 petition is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.